In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00204-CV**
_____

**BAYER CROP SCIENCE, LP, MONSANTO COMPANY, AND BASF CORPORATION, Appellants**

**V.**

**ANDY TIMMONS, INC., D/B/A LOST DRAW VINEYARDS, ET AL, Appellees**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-207,748**

**MEMORANDUM OPINION**

In this accelerated appeal, we hold that for purposes of the mandatory venue provisions of section 15.011 of the Civil Practice and Remedies Code, a suit for damages to vineyards and grape crops is a suit for recovery of damages to real property. We also hold that each plaintiff failed to establish venue is proper in Jefferson County under section 15.003 of the Civil Practice and Remedies Code. Accordingly, we reverse the trial court's order denying the motion to transfer venue

1

and remand the case to the trial court with instructions to transfer venue of the claims to the counties where the plaintiffs' real property is located.

Asserting causes of action for strict liability for design defect and negligent design of a dicamba-based cotton seed system, fifty-seven vineyard owners and four grape processors (collectively "the Vineyard Owners") sued Bayer Crop Science, LP, Monsanto Company, and BASF Corporation (collectively "the Chemical Companies").[1] The Vineyard Owners alleged that separate dicamba-based

---

[1]Appellees, the plaintiffs named in the Plaintiffs' Original Petition, include: Andy Timmons, Inc. d/b/a Lost Draw Vineyards, Alegria de la Vida Vineyards, LLC, Alta Loma Vineyard Partnership, Benjamin Friesen, Bingham Family Vineyards, LLC, Rowdy Bolen and Tameisha Bolen, Bueno Suerte Vineyards, LLC, Castano Prado Vineyard, LLC, Mike West d/b/a Challis Vineyards, Chase Lane and Kendra Lane d/b/a Chase Lane Vineyard, Gary Steven Brown and Pamela Joyce Brown d/b/a Cooper Vineyard, Russell Smothermon and Sharlann Smothermon d/b/a Corkscrew Vineyard, Cornelious Corporation, Cox Family Winegrowers, LLC d/b/a Cox Family Vineyards, LT Investment Group, LLC d/b/a Crazy Cluster Vineyard, Mary Mckee d/b/a Curvo Fila Vineyard, Daniels Farmland Trust, Ty Wilmeth d/b/a Diamante Doble Dos Vineyards, Jeter and Gay Wilmeth d/b/a Diamante Doble Vineyard, Larry Smith and Sue Smith d/b/a Dog Gone Vineyard, Donna Burgess Enterprises, LLC d/b/a My Covenant, Dwayne Canada, Brenda Canada, and Daniel Canada d/b/a Canada Family Vineyard, Sawyer Farm Partnership d/b/a The Family Vineyard, Lonnie Graham and Penny Graham d/b/a Five Star Vineyard, Dustin Gilliam and Glenda Gilliam d/b/a Gilliam Gap Vineyards, Gillmore Brothers, LP d/b/a Gillmore Brothers Vineyard, Andis Applewhite d/b/a Half Circle Cross Vineyard, La Pradera Vineyards, LLC, Lahey Farms, LLC, Lilli of the Vine Vineyards, Inc., AA Martin Partners, Ltd., Peggy Seeley and George Seeley d/b/a Moonlight Vineyards, Narra Vineyards, LLC, Hilltop Winery at Paka Vineyards, LLC, Peggy Bingham d/b/a Peggy Bingham Farms, Tony Phillips and Madonna Phillips d/b/a Phillips Vineyard, Reddy Vineyards, Inc., Rowland Taylor Vineyards, LLC, Clara Ann McPherson d/b/a Sagmor Vineyards, Charles and Cheryl Seifert d/b/a Seifert Stables & Vineyards, Six Harts Vineyard, LLC, The Tom and Janice Henslee Living Trust, Doug Thomas

2

herbicides designed, developed, and manufactured by Monsanto and BASF for use on cotton and soybean crops migrated from the cotton fields where they were applied and damaged the Plaintiffs' grapevines and vineyards. The Vineyard Owners alleged the Chemical Companies were joint venturers in the development, design, marketing and commercialization of the dicamba-based cotton seed system, that the Chemical Companies are strictly liable for developing a dicamba-based seed system that was defective and unreasonably dangerous when it left their hands, that they are liable for negligently designing a dicamba-based seed system, and that each Vineyard Owner suffered lost yields of grapes from their vineyards, a reduced quality of grapes from their vineyards, and lost value of their vineyards. None of the vineyards are located in the county of suit.

To support venue in Jefferson County, the Vineyard Owners relied upon the permissive venue provision under section 15.002(a)(1) of the Texas Civil Practice

---

and Anissa Thomas d/b/a Thomas Acres, Tony and Bertha Hendricks d/b/a Hendricks Family Vineyard, Carolyn Keane, Anna Winnell Young and Marjorie Jones Partnership d/b/a Tucker farms, Twin-T Vineyards, Inc., Joe Riddle d/b/a Uva Morado Vineyard, Ronald Luker and Margaret Luker d/b/a White Rock Vineyards, Williams Ranch Vineyard, LLC, Larry Young d/b/a Young Family Vineyards, Caprock Distributors, LLC, Steve Newsom, Cindy Newsom and Gabe Hisel, Newsom Family Farms, LLC, Ledlie Powell, individually and as trustee of the Ledlie S. and Danette Powell Revocable Trust d/b/a Newsom Powell Vineyard, Don Hill d/b/a Don Hill Farms, Texas Custom Wine Works, LLC, Texas Winery Owners Group, LLC, Kim McPherson d/b/a McPherson Cellars, Inc., Lynce Charles Carroll, Texas Wine Company, Inc., and AKG Realty, Inc. They alleged that Bayer Crop Science, LP owns Monsanto Company.

3

and Remedies Code, which permits suit to be brought in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, because BASF:

> researched, designed, formulated, compounded, developed, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised, and sold an allegedly low-volatility dicamba-based herbicide called Engenia for use with the Xtend crop system. BASF manufactures its Engenia herbicide exclusively at its pesticide plant in Jefferson County, Texas.

The Vineyard Owners identified BASF as a Delaware corporation with a principal place of business in Florham Park, New Jersey.

In the alternative, the Vineyard Owners alleged venue is proper under 15.002(a)(3) of the Civil Practice and Remedies Code, which allows a suit to be brought in the county of the defendant's principal office, because "BASF manufactures its dicamba-based herbicide Engenia at its pesticide plant in Jefferson County[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1), (3) ("Except as otherwise provided by this subchapter or Subchapter B or C, all lawsuits shall be brought: (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; . . . (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person."). [2]

---

[2]In the venue hearing, the Vineyard Owners acknowledged that BASF's principal place of business in Texas is in Harris County and abandoned their allegation that BASF's principal office in Texas is in Jefferson County.

The Vineyard Owners alleged venue is proper as to Bayer and Monsanto under section 15.005 of the Civil Practice and Remedies Code, which provides that if venue is proper against one defendant, the court also has venue of all of the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences, either because venue lies as to BASF and the defendants entered into a joint venture to develop a dicamba-resistant seed system to which dicamba-based herbicide could be applied, or because the defendants each engaged in a series of transactions or occurrences that gave rise to the Plaintiffs' claims. *See id*. § 15.005 ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences.").

BASF filed a motion to transfer venue pursuant to sections 15.003 and 15.063(1), specifically denying that it has a principal office in Jefferson County or that a substantial part of the events and omissions giving rise to the claims occurred in Jefferson County. *See id*. §§ 15.003 (requiring each plaintiff to independently establish proper venue), 15.004 (requiring suit in a multiple-claim case to be brought in the county required by a mandatory venue provision), 15.063(1) (requiring transfer to a county of proper venue if the county of suit is not a county of proper venue). BASF alleged venue is mandatory in the counties where the land is located

5

because alleged destruction to perennial crops and farmland are characterized as damages to real property for purposes of venue.[3] BASF specifically denied that a substantial part of the events giving rise to the claims occurred in Jefferson County, because BASF manufactures Engenia there, as none of the Vineyard Owners' claims are predicated on the allegation that Engenia was improperly manufactured. BASF argued the Vineyard Owners failed to allege that Jefferson County is the location of BASF's principal office in Texas. BASF specifically denied that BASF's principal office is in Jefferson County and alleged its principal office in Texas is located in Houston. BASF contended that even in the absence of a mandatory venue statute, venue would be improper in Jefferson County. Bayer and Monsanto joined BASF's motion to transfer.

The trial court held a hearing on the motion to transfer venue. In the hearing, the Vineyard Owners agreed that BASF's principal place of business in Texas is not in Jefferson County. The trial court denied the motion to transfer venue. In addition to perfecting an accelerated appeal, the Chemical Companies filed a joint petition for a writ of mandamus. *See id*. §§ 15.003, 15.0642.

The Vineyard Owners argue this Court lacks appellate jurisdiction because the Chemical Companies challenge a mandatory venue ruling that the Vineyard

---

[3]According to BASF, the allegedly damaged real property is located in Terry, Hockley, Lamb, Gaines, Yoakum, Lubbock, Floyd, Dawson, Hale, and Scurry Counties.

Owners argue is reviewable only by mandamus. *See id.* § 15.0642. They argue section 15.0642 controls in a mandatory venue case because it is a more specific statute than the general provisions of section 15.003. The Chemical Companies argue an interlocutory order denying a motion to transfer venue in a multiple-plaintiff case is by statute expressly appealable through an accelerated appeal, making mandamus review unnecessary because an accelerated appeal is available.[4] *See id.* § 15.003(b).

Generally, no interlocutory appeal may be had from a venue ruling. *See id.* § 15.064(a). Within certain time constraints not at issue here, section 15.0642 allows a party to challenge a mandatory venue ruling through mandamus. *See id.* § 15.0642. Section 15.003 is a joinder statute that requires each plaintiff and intervenor in a multiple-plaintiff case to independently establish proper venue and allows an accelerated appeal of a trial court's determination that a plaintiff did or did not independently establish proper venue. *See id.* § 15.003(b).

"[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *El Paso Educ. Initiative,*

---

[4]The Chemical Companies filed a separate mandamus petition, which we numbered and styled No. 09-22-00232-CV, *In re Bayer Crop Science, LP*, but they argue this accelerated appeal is the appropriate vehicle for us to review their complaints regarding the trial court's venue ruling in this multiple-plaintiff case.

*Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 532 n.52 (Tex. 2020). Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). Sections 15.003(b) and 15.0642 provide different procedural vehicles for an expedited review of a venue ruling. Section 15.003(b) neither refers to nor excepts section 15.0642 and section 15.0642 neither refers to nor excepts section 15.003(b). Neither section states that it provides an exclusive remedy. Since a venue ruling may be challenged on direct appeal following a trial on the merits, neither statute provides the sole means through which a party may challenge the trial court's ruling on the motion to transfer venue. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) ("On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error and shall be reversible error."). We conclude that in a multiple-plaintiff case where the defendant moves to transfer the case to a county of mandatory venue, both statutes may apply but one is not exclusive of the other. The trial court's order denying the Chemical Companies' motion to transfer may be challenged in an accelerated appeal under section 15.003(b) as a determination by the trial court that each of the plaintiffs independently established proper venue. *See id*. § 15.002(b)(2). When the trial court rules on a motion to transfer venue in a case involving multiple plaintiffs and determines whether a plaintiff independently established proper venue, the defendant may challenge the trial court's order in an

8

accelerated appeal even if every plaintiff relies upon the same theory of proper venue. *Union Pacific R.R. Co. v. Stouffer*, 420 S.W.3d 233, 237 (Tex. App.—Dallas 2013, pet. dism'd); *see also Crown Cent. LLC v. Anderson*, 239 S.W.3d 385 (Tex. App.—Beaumont 2007, pet. denied) (considering merits of accelerated appeal under section 15.003 in a case where every plaintiff relied on the same theory of venue). We conclude the notice of appeal properly invoked this Court's appellate jurisdiction.

In their first issue, the Chemical Companies argue that Jefferson County is not a county of proper venue because mandatory venue lies in the counties where the real property is located. The Vineyard Owners alleged the product in question damaged the growing crops attached to the land and the vineyards themselves, which the Chemical Companies argue establishes that the suit is for damages to real property for purposes of section 15.011 of the Civil Practice and Remedies Code. The Vineyard Owners argue the mandatory venue in section 15.011 does not apply to claims for damages that do not depend on resolving disputes regarding ownership, title, or interests in real property.

To establish mandatory venue under section 15.011, the party seeking transfer must show that all or a part of the property is located in the county of transfer and that the suit is one of the actions described in section 15.011. *In re Kerr*, 293 S.W.3d 353, 356 (Tex. App.—Beaumont 2009, orig. proceeding [mand. denied]). The nature

9

of the lawsuit is a question of law. *Id.* Courts determine the nature of the suit from the facts alleged in the plaintiffs' pleadings, the right asserted, and the relief sought. *Id.*

The Vineyard Owners do not dispute the location of the real property. None of the real property is located in Jefferson County, thus, the issue is whether the lawsuit is of the type that falls within one of the actions described in section 15.011, which states:

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, *for recovery of damages to real property*, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

Tex. Civ. Prac. & Rem. Code Ann. § 15.011 (emphasis added).

The Vineyard Owners argue the Chemical Companies failed to prove the Vineyard Owners own the land on which their vineyards are situated. They argue there is no basis for applying a mandatory venue provision relating to real-estate disputes to a products liability suit. The factual recitations in the Vineyard Owners' original petition establish, however, that the Vineyard Owners are suing for cumulative permanent damage to farmland, not merely for damages to a seasonal grape crop. The Vineyard Owners allege:

> One of the largest cotton patches in the world is in the Texas High Plains near Lubbock. Monsanto and BASF's dicamba-based seed system has become widely used in the region, with more than two million acres planted. Thus, every summer when cotton farmers have

10

dicamba applied over the top of their dicamba resistant crops, a massive cloud of dicamba covers the High Plains.

But cotton is not the only crop grown in the High Plains. Within and among the cotton fields are dozens of vineyards that produce roughly 85% of the grapes used to make wines in Texas. They are the core of the state's $13 billion wine industry, the nation's fifth largest. Grapes, however, are extremely sensitive to dicamba. And grapevines cannot be made dicamba-resistant.

Dicamba damage on grapevines in the High Plains was unheard of prior to the release of Monsanto and BASF's dicamba-based seed system. Now it can be found throughout every portion of every vineyard in the region. As volatilizing or drifting dicamba comes in contact with a grapevine, the plant is harmed, reducing the plant's overall health. Leaves deform, cup, and shrink-and soon the plant stops growing. And when vines get hit with dicamba many times a year, for multiple years, the results are disastrous-stunted development, significantly reduced yields, poor quality grapes, and, eventually, vine death. Over the past few years, this is exactly what has happened in the High Plains.

This case is brought by fifty-seven (57) vineyards (roughly 3,000 acres of vines) and four related processors that have invested tens of millions of dollars and years of toil in developing their fields. Their investment and work, however, has been destroyed by Monsanto and BASF's defective dicamba-based seed system. The cloud of dicamba that now covers the High Plains each summer has crippled what was an award-winning and rapidly growing industry. The vineyards have seen their production fall dramatically, and what grapes do grow are often rejected for poor quality. Contracts have been cancelled, winemakers have had to seek grapes elsewhere, and a stigma has attached to the region. The overall value of these vineyards has been significantly impaired both now and in the future.

All told, the Plaintiffs have suffered over $114 million in economic damages. The Plaintiffs now seek to recover these damages and, based on Defendants' knowing and intentional release of the defective seed system, at least $228 million in punitive damages from

11

Bayer-Monsanto and $228 million in punitive damages from BASF. In total, Plaintiffs will seek at least $560 million at trial.

Citing *Yzaguirre v. KCS Resources, Incorporated*, the Vineyard Owners argue section 15.011 is limited in scope to suits implicating ownership or possession of real property. *See* 53 S.W.3d 368, 371 (Tex. 2001). But in *Yzaguirre*, the Court noted that a previous version of the mandatory venue statute applied there and that the current version of the statute includes suits to recover damages to real property. *Id.* at n.1. *Yzaguirre* provides no support for limiting the amended version of section 15.011 to suits implicating ownership or possession of real property.

The Vineyard Owners also rely upon *Allison v. Fire Insurance Exchange. See* 98 S.W.3d 227 (Tex. App.—Austin 2002, review granted, judgment vacated and remanded by agreement). The plaintiff in *Allison* sued an insurance company for failing to pay for mold damage to a residence. *Id*. at 233. The court held section 15.011 did not apply. *Allison* was a suit on an insurance contract, not a suit for damages the defendant inflicted on the real property. *See id*. We also have held such a suit does not seek recovery of damages to real property. *In re Mountain Valley Indem. Co.*, No. 09-20-00155-CV, 2020 WL 5551707, at *4 (Tex. App.—Beaumont Sept. 17, 2020, orig. proceeding [mand. denied]) (mem. op.). This case is different. Here, the Vineyard Owners seek to recover from the Chemical Companies damages the defendants' dicamba-based seed system inflicted on the vineyards.

12

"Statutory construction is a legal question we review de novo. In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). Absent a definition provided by the Legislature or any technical meaning the words have acquired, we construe the statute's words according to their plain and common meaning. *Id.* Extrinsic aids are inappropriate when a statute's language is clear and unambiguous. *Id*. at 626.

One of our sister courts has held that the common and ordinary meaning of the phrase "damages to real property" is "money claimed as compensation for loss or injury to land or anything attached to land." *In re Custom Home Builders of Cent. Tex. Inc.*, 647 S.W.3d 419, 422 (Tex. App.—San Antonio 2021, orig. proceeding). We agree. The term "real property" includes anything growing on or attached to land, excluding anything that may be severed without injury to the land. *Id.* Furthermore, trees and perennial crops were considered to be land under a previous version of the venue statute, which required a suit "for the recovery of lands or damages thereto" to be brought in the county where the land is located. *See Hunt Oil Co. v. Murchison*, 352 S.W.2d 365, 366 (Tex. Civ. App.—Eastland 1961, no writ) (pecan trees); *Wynne v. Freiley*, 349 S.W.2d 734, 736 (Tex. Civ. App.—Dallas 1961, no writ) (trees); *Tracy v. King*, 249 S.W.2d 642, 643 (Tex. Civ. App.—Dallas 1952,

13

no writ) (sweet potatoes); *Grogan-Cochran Lumber Co. v. McWhorter*, 4 S.W.2d 995, 997 (Tex. Civ. App.—Beaumont 1928, no writ) (timber trees).

We hold that the pleaded claims fall within the mandatory venue provision of section 15.011 of the Civil Practice and Remedies Code, which requires that a suit for recovery of damages to real property be filed in the county where all or a part of the property is located. We also hold that each plaintiff failed to establish venue is proper in Jefferson County under section 15.003 of the Civil Practice and Remedies Code and the trial court erred by denying the motion to transfer.[5] Accordingly, we reverse the trial court's order denying the motion to transfer venue and remand the case to the trial court with instructions to transfer venue of the claims to the counties where the plaintiffs' real property is located.

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on September 8, 2022
Opinion Delivered November 17, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.

---

[5]Since we hold a mandatory venue provision applies, we do not reach issue three, which challenges the exercise of permissive venue in Jefferson County.